### H. HOUSE v. S. BROWN.

Decided November 27, 1899.

1. **Assignment of Error.**
   An assignment will not be considered where it undertakes to present together three distinct grounds of error.

2. **Practice on Appeal—Conflicting Evidence.**
   The appellate court will not disturb a verdict for the reason only that it was found on conflicting evidence.

3. **Acceptance of Order—Subsequent Changes.**
   Where an order drawn by a contractor on the owner of a building in course of construction has been accepted, the rights under the acceptance of the holder of the order can not be prejudiced by subsequent changes in the building contract made without his assent.

APPEAL from Harris. Tried below before Hon. WILLIAM H. WILSON.

*W. P. & E. P. Hamblen,* for appellant.

*Hutchinson, Campbell & Myer,* for appellee.

GILL, ASSOCIATE JUSTICE.—In 1895, appellant, H. House, contracted with the firm of Bonnell, Matthews & Harding to erect for him the brick building in the city of Houston now known as the "Bristol Hotel," the contractors to furnish all labor and material.

On September 30, 1895, the contractors gave to S. Brown the following written order: "Mr. H. C. House: Thirty days after date pay to the order of S. Brown one thousand dollars to be paid out of the ninth estimate. To be renewed if the estimate is not due in thirty days. [Signed]  Bonnell, Matthews & Harding."

It was indorsed as follows: "I agree to deduct the above amount of $1000 from the ninth estimate whenever issued by Messrs. Rudesill & Son, architects, and pay same to Mr. S. Brown for labor or material furnished. (Signed) H. House, by C. H. House."

Upon this instrument and acceptance the appellee brought this suit against appellant, setting forth the contract between the contractors and appellant, averring the completion and acceptance of the part of the work to be included in the ninth estimate and the issuance of the estimate by the architects. It was further alleged, that if said estimate had not in fact been issued it was being fraudulently withheld as a result of a combination between the architects and appellant to defeat the appellee's recovery.

Appellant answered by general denial and averments to the effect that the ninth estimate had never been completed nor issued. That the acceptance was without consideration, because appellee had furnished neither labor nor material, but had loaned $1000 in money to the contractors, which was not used in the building. That the contractors abandoned the work before completion, and it cost appellant more to

complete the ninth estimate and more to complete the building than the contract price.

The cause was submitted to a jury upon special issues, and upon the answers judgment was rendered in favor of appellee for his debt. The contractors were not made parties, because insolvent and nonresidents of the State.

Appellant's first assignment of error will not be considered, because too general, and because it undertakes to present in one assignment three distinct grounds of error.

The second assignment of error assails the action of the trial court in refusing to grant appellant a new trial, because the verdict of the jury as to each issue submitted was without support in the evidence.

The jury found, (1) that by the "ninth estimate" was meant the completion of the "sanitary floor." (2) That the $1000 furnished by appellee was used to pay for labor and material in the construction of the building. (3) That Rudesill & Son, the architects, had issued the certificate for the ninth estimate. (4) That the sanitary floor had been completed before abandonment of the work by the contractors, but not according to plans and specifications. (5) They found in effect that the ninth estimate had not been fraudulently withheld.

The evidence is conflicting upon every issue. We will briefly notice that tending to support the verdict, for if fair support for it is found in the record, this court is not authorized to disturb it. Whether by the expression "ninth estimate" was meant the completion of the "sanitary floor" was a point of sharp controversy, and it is strenuously contended here that the ninth estimate was to be issued upon the completion of the building.

The estimates, eleven in all, are set out in the original contract and the amounts to be paid thereon are stated. On the margin of the contract opposite the first two items of payment is noted that appellant may withhold them until the completion of the building in lieu of a bond from the contractors. The remaining nine were numbered from 1 to 9, the sanitary floor thus being numbered 7. It is shown, however, that the contractors gave the required bond, and the testimony of Rudesill himself shows that the first two items were estimated in their order, and he speaks of the $3500 item (numbered 1) as the third estimate, and states that it was so issued. If this estimate was treated as the third, the "sanitary floor" estimate of $1500 would properly come ninth in order of issuance. The witness Duffy stated that he received an order from the contractors on appellant for $513, payable out of the ninth estimate, and that upon presentation to appellant, payment was declined on the ground that an order had been accepted on that estimate for $1000, and the amount of his order would therefore exceed the estimate. After a lien had been fixed by Duffy, the architect issued a voucher directing appellant to pay $500 of the claim and charge to "account of the contractors on contract." The sanitary floor estimate

is the only one for $1500 after the first item. The force of this fact and of the payment of $500 of this order is not seriously diminished by the explanation that it was paid on the general account and out of no particular estimate, but for the reason that a lien had been fixed to secure it.

We are of opinion that these circumstances are sufficient to support the answer of the jury, that the order was drawn and accepted on the estimate which should include the sanitary floor.

The other answer most vigorously assailed is the finding that the ninth estimate was actually issued by Rudesill & Son. It is true that both Rudesill and House deny its issuance, but the facts remain that the tenth estimate was in fact issued, though subsequently withdrawn, because the work was not in fact complete. It is also true that the sanitary floor, in so far as its construction was not modified by subsequent changes in the contract, was finished by the contractors before they quit work, and the work was actually done largely under the immediate supervision of the architect, who for the purpose of directing the work and accepting the results, was the agent of appellant. While not done in strict accord with the specifications, it was nevertheless used as finished for nearly two years before any change or repair was undertaken. Immediately after the abandonment of the work by the contractors, the architect, by direction of appellant, inspected the building to find out what remained to be done and the cost to complete it. In pursuance of this order he made a minute and itemized report, but in it the important item of the alleged worthless and uncompleted sanitary floor was nowhere mentioned. The man who assisted the architect in this inspection states that it was nowhere mentioned or considered during the inspection. These circumstances and the admission of Rudesill to Campbell, so inconsistent with the denials and explanations, were peculiarly within the province of the jury to reconcile and determine, and adding them to the circumstances surrounding the presentment and partial payment of the Duffy order, we do not feel authorized to disturb the finding, approved as it was by the trial judge. This court passing primarily upon the facts may not have reached a like conclusion, but this alone would not justify us in invading the province of the jury.

To the objection to the answer that the money furnished by Brown was used in the building, it is sufficient answer to say that it finds ample support in the fact of the threatened strike on the part of the workmen and in the testimony of Brown, who also fixes knowledge upon appellant as to the purpose for which it was furnished, and the date of the acceptance and payment.

These findings of the jury are sufficient to support the judgment for appellee, and the answer to the fifth special issue was unnecessary. Nor do we think the contention tenable that the fifth answer was inconsistent with the other findings. We dispose of the assignments affecting this question by saying the lucid explanation given by the court in answer to the question propounded by the jury concerning the fifth is-

sue, rendered its meaning clear, and the answer of the jury thereto was consequently perfectly intelligible and consistent with the preceding answers.

The third assignment of error, complaining of the refusal of the trial court to admit testimony to the effect that it cost more to complete the sanitary floor, after the abandonment of the work by the contractors, than the contract price, can not be sustained, for the reason that the additional work necessary to its alleged completion was under the provisions of a material and radical change in the contract made subsequent to the acceptance of the order by appellant. The rights of appellee under the acceptance could not be prejudiced by subsequent changes in the contract made without his assent. Nor was he bound to see that the contractor did the work in strict accord with the terms of the contract either originally or as changed. This was the duty of the architect representing appellant. His rights were fixed by the facts that the money was furnished the contractors and was used in furtherance of the construction of the building, and that the ninth estimate had issued. These facts the jury found to exist, and no further inquiry was necessary. The proffered proof that it cost more to complete the building than the contract price was equally inadmissible, for the additional reason that the original contract had been changed subsequent to the date of the acceptance so as to require the addition of a fourth story to a building originally designed to be a three story.

We find no reversible error in the record, and the judgment is affirmed.

*Affirmed.*